TIMOTHY N. HICKS, trustee, plaintiff in error, vs. EDWARD JOHNSTON, defendant in error.

When a deed or will settles property on a *feme covert* to her separate use and in no wise to be subject to the debts or contracts of her husband, the wife cannot dispose of the property for that purpose or authorize her husband to do it.

Trover from Bibb. Decision by *Judge POWERS*, June Term, 1857.

This was an action of trover by Timothy N. Hicks, trustee of Mrs. Francis Jane Bowen, against Edward Johnston, for the recovery of a negro woman, named Milly.

The case was submitted in the Court below upon the following agreed statement of facts, viz:

The woman Milly, is the same negro described in the second item of the will of Mrs. Martha Bowdry, which is as follows:

"I give and bequeath to T. W. Hicks, in trust for my neice Francis Jane Bowen, daughter of the late Edmund Hicks, one negro girl called big Milly, to be held by him for her separate use and advantage, and in no wise to be subject to the debts or contracts of her present or any future husband."

That after the death of Mrs. Bowdry, said negro was by the administrator with the will annexed, put into the possession of the trustee, and by his permission, she went to live with Mrs. Bowen, who hired her out and collected the hire herself. Said negro was under Mrs. Bowen's control, who exercised the usual and ordinary acts of ownership over her. Negro worth from $900 to $1,000 and her annual hire $100.

The husband of Mrs. Bowen, with her consent, brought the negro woman to the city of Macon, they expecting at the time to remove there themselves. The husband came to Macon, (his wife remained in Augusta,) and here mortgaged the negro to defendant Johnston for $500, and delivered her to him. After the mortgage was executed and before the advance or payment of all the money to the husband, a telegraphic dispatch was sent to Mrs. Bowen, who replied as follows: "Augusta, Nov. 5th, 1855. For E. Johnston; C. C. Bowen has right to mortgage negro woman Milly. Francis Bowen." The husband received the money, and by contract with him at the time, the negro was to remain in possession of Johnston until the money was repaid. The hire to balance the interest. Before suit brought, plaintiff demanded the negro of defendant, who replied that he would deliver her up on payment of the $500 according to his contract; did not want her if he was paid the $500, but would not deliver her until he was paid; and now offers to deliver her upon receiving the $500.

Upon these facts, the parties requested the Court to direct the jury as to their finding.

The Judge held that the plaintiff was not entitled to recover, and ordered a nonsuit.

To which decision counsel for plaintiff excepted.

LAMAR & LOCHRANE; and SPEER, for plaintiff in error.

STUBBS & HILL, *contra.*

*By the Court*—McDONALD, J. delivering the opinion.

Upon the agreed facts of this case, it appears that the defendant had notice that the slave mortgaged was held in trust for the wife; that she was her separate property, and that she was in no wise to be subject to the debts or contracts of her husband.

These are the terms of the trust as set *forth in the* statement of facts agreed to. Instead of telegraphing the trustee, the wife was telegraphed, and she it was who sent a dispatch that her husband had a right to mortgage the negro. It does not appear that the money was raised for the benefit of the trust; but on the contrary, the inference is, that it was for a contract or debt of the husband, which is expressly forbidden in the trust. In the case of *Kempton vs Hallowell & Co.*, decided by this Court at the last January Term, this point among others was brought before this Court for its determination, and a majority of the Court held that, when property was settled in trust for the wife, not to be subject in any manner to the contracts, debts or engagements of the husband, the wife could not bind it for that purpose.

There was no dissenting opinion delivered in that case, as there was no difference of opinion on many points which controlled the merits of the case. The Courts in England, as well as in this country, until a comparatively recent period, held, that where property was held in trust for a married woman who was entitled to receive for her own use the entire proceeds of it, and there was no limitation over, she had the power, as one of the incidents of property to alien or dis-

pose of it, absolutely, she being considered a *feme sole*, as to her separate property.   Modern decisions have restricted this power, and have allowed the instrument of settlement to control the right.   The first innovation was where there was a positive restriction upon alienation, called a clause against anticipation, in the deed of settlement.

It has been since held "that a direction to pay the income, from time to time into the proper hands of the wife, is sufficient of itself to deprive her of the absolute disposing power over the whole interest."   *Hill on trustees* 615, *2d Am. Ed.*

The remarks of Lord Chancellor Loughborough, in the case of *Milnes vs. Bush*, are not without force; and why the maxims of the common law and the principles of Courts of Chancery should be disregarded, in a relation in which a most powerful and controlling influence exists, is difficult to be accounted for.   He was unwilling to admit the doctrine, that the wife was to be considered as a *feme sole* in respect to her separate property, so far as her husband was concerned, for he says: "that all the maxims of the common law and the care and prudence of this Court as to married women, with respect to their husbands, so liable to influence, should be totally set aside without any form, not only the guards the law has established and the course of this Court, with regard to trust estates in equity, but without the common precaution which would attend the transactions of persons under a degree of influence, that she should be considered a *feme sole quoad* her husband and in transactions between them, would require great consideration."   *2 Vesey Jr.* 498.

In the case before us, according to the construction which this Court has placed upon an instrument of the same purport, neither the trustee nor the *cestui que trust*, could dispose of the slave, for the benefit of the husband or upon his contract or for his debts.   This case perhaps illustrates strongly the propriety of adhering to the rule, that would

prohibit the wife from dealing with her husband or for his benefit, as a *feme sole*, with respect to her separate property.

Judgment reversed.